[Cite as *State v. James*, 2022-Ohio-2040.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                   No. 110812

    v.                                          :

DJUAN D. JAMES,                         :

    Defendant-Appellant.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, VACATED IN PART,
                  AND REMANDED
**RELEASED AND JOURNALIZED:** June 16, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-653750-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Brandon A. Piteo and Frank R. Zeleznikar, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Djuan James ("James"), appeals his convictions for aggravated menacing and aggravated assault, which is the inferior offense of felonious assault. For the following reasons, we affirm the aggravated

menacing convictions, vacate the aggravated assault conviction, and remand for a new trial on the felonious assault charge.

## I.     Facts and Procedural History

{¶ 2} In October 2020, James was charged in a three-count indictment. Count 1 charged him with felonious assault in violation of R.C. 2903.11(A)(2) and Counts 2 and 3 charged him with aggravated menacing in violation of R.C. 2903.21(A). The charges stem from an incident at the defendant's and victims' (J.S. and J.K.) apartment complex. The matter proceeded to a jury trial in July 2021, at which the following relevant evidence was adduced.

{¶ 3} On October 8, 2020, James and J.K. were drinking in the morning at J.S. and J.K.'s apartment in the Garden Valley housing complex in Cleveland, Ohio. James lived in the same complex but in a different building. J.K. testified that before James arrived at her apartment, James vomited in the stairwell landing located on the floor below her apartment. James told J.K. that he just threw up on the landing because "[h]e wasn't feeling well." (Tr. 514, July 8, 2021.) They proceeded to drink together for a period of time before James left the apartment.

{¶ 4} Sometime later in the evening, a neighbor knocked on J.K.'s door and advised that someone had vomited. J.K. told her neighbor that it was James. She then went into the hallway and observed her neighbor and another neighbor. A few minutes later, James came walking up the stairs. They told James to clean up his mess. J.K. testified that J.S., the father of her child, came home while they were all standing in hallway. J.K. then went to her apartment and brought out a mop and

bucket, which contained previously used mop water, for James to clean up the vomit. While J.K. was inside, she told J.S. that James said, "I'll kill your man." (Tr. 501, July 8, 2021.) When J.K. returned with the mop and bucket, James, who was still in the stairwell, told J.K., "I don't want to use that dirty water." (Tr. 500, July 8, 2021.) J.K. replied, "fine," and proceeded to kick the mop bucket, causing water to splash. (Tr. 501, July 8, 2021.)

{¶ 5} J.S. came outside as J.K. was cleaning up the vomit. J.K. testified that after she finished cleaning up the mess, J.S. and the other neighbors were still in the hallway talking. She happened to turn around and observe James come "flying from the second floor with a knife." (Tr. 502, July 8, 2021.) Everyone began to run. J.S. flung J.K. inside their apartment, grabbed the mop, and used it to fight off James. James was swinging the knife, saying "I'll kill you all mother f******." (Tr. 503, July 8, 2021.) A struggle ensued between James and J.S. outside the apartment door. J.K. testified that she was able to get J.S. into the apartment and they shut and locked the door. James continued to kick and beat on the door. J.K. called 911, the call was played for the jury. In the call, J.K. tells the dispatcher that there is a man, whom J.K. identified as James, with a knife trying to cut people and kill her "baby daddy," whom J.K. identified as J.S.[1]

{¶ 6} One of the responding police officers testified that she obtained James's statement and noted that he was "clearly intoxicated." James also admitted

---

[1] Based on the testimony presented at trial, the knife James used was either a pocket knife or a kitchen knife that he retrieved from his ex-girlfriend's apartment, which was located adjacent to the area being mopped.

to the responding police officers that he had charged at the victims after wielding a knife. James's admission was captured on the officer's body camera video, which was played for the jury. The officers found a pocketknife in James's right, front pocket. The officers arrested James for felonious assault and aggravated menacing based on the victims' and James's statements.

{¶ 7} James testified on his own behalf. He testified that on the day in question, he was drinking with J.K. at her apartment. He left J.K.'s apartment, without telling anyone, went into the hallway and vomited. James stated, "I think I had some bad chicken[.]" (Tr. 643, July 9, 2021.) He then returned to J.K.'s apartment for a period of time. Afterwards, he went back home and slept. Around 5:00 p.m., James returned to J.K.'s building. He observed J.K. in the hallway with another male. James testified that when J.K. brought out the mop and bucket, she was angry and "started slinging the mop." (Tr. 646, July 9, 2021.)

{¶ 8} He further testified that J.K. then "kicked the bucket [and] [t]hat's when the water got on me." (Tr. 646, July 9, 2021.) James then went to his ex-girlfriend's apartment which was on the second floor. When he came back out, J.K. was on the landing. James testified, J.K. "got the mop * * * just splashing like this[.] Just splashing it right in my face." (Tr. 647, July 9, 2021.) James then said, "That's it." (Tr. 647, July 9, 2021.) James admitted to brandishing his knife during the altercation and once J.K. and J.S. were inside the apartment, he pounded on their door, saying "I'm going to hurt both of you mother —." (Tr. 650, July 9, 2021.)

James testified that he only pulled out the knife after J.S. confronted him with the mop.

{¶ 9} During the trial court's jury instructions, the court included an instruction on aggravated assault, the inferior-degree offense of felonious assault. It is unclear from the record who requested that jury charge. Thereafter, the jury returned guilty verdicts on aggravated assault and the two counts of aggravated menacing. The trial court sentenced James to an 18-month term of imprisonment on the aggravated assault, with up to three years of discretionary postrelease control, and six months on each of the aggravated menacing counts. The court ordered that all the counts run concurrent to each other, and that James receive 306 days of jail time credit.

{¶ 10} James now appeals, raising the following four assignments of error for review:

> **Assignment of Error I**: The trial court committed plain error by instructing the jury to consider the inferior offense of aggravated assault upon a finding of not guilty as to felonious assault.
>
> **Assignment of Error II**: There was insufficient evidence produced at trial to support a finding of guilt on all counts.
>
> **Assignment of Error III**: The trial court erred by finding the defendant guilty against the manifest weight of the evidence.
>
> **Assignment of Error IV**: [James] was denied the effective assistance of counsel in his trial.

## II. Law and Analysis

### A. Inferior Offense — Aggravated Assault

{¶ 11} In the first assignment of error, James argues that the trial court erred by instructing the jury to consider the inferior-degree offense of aggravated assault after finding him not guilty of felonious assault. We note that throughout the trial, the aggravated assault offense was treated as a lesser-included offense of the felonious assault, as charged in Count 1, with the trial court referring to the aggravated assault as a "lesser inferior offense."

{¶ 12} Both James and the state of Ohio concede that the trial court's instructions were erroneous and acknowledge that neither party objected to this erroneous instruction. Therefore, we review for plain error.

{¶ 13} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. In order to establish plain error, James must demonstrate that, but for the error, the outcome of the trial would have been different. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 17, citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001). As a result, the sole issue in the instant case, is whether the error in the jury instructions affected the outcome of trial.

{¶ 14} In *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), the Ohio Supreme Court distinguished between a lesser-included offense and an offense that is an "inferior degree" of the indicted offense. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *Id.* at paragraph two of the syllabus, citing R.C. 2945.74 and Crim.R. 31(C).

> An offense may be a lesser included offense if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.

*Id.* at paragraph three of the syllabus, citing *State v. Kidder*, 32 Ohio St.3d 279, 513 N.E.2d 311 (1987).

{¶ 15} With regard to felonious assault and aggravated assault, our court has stated:

> It is well settled that aggravated assault is not a lesser-included offense of felonious assault. Instead, aggravated assault is an inferior degree of felonious assault because its elements are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim. *State v. Searles*, 8th Dist. Cuyahoga No. 96549, 2011-Ohio-6275, citing *State v. Logan*, 10th Dist. Franklin No. 08AP-881, 2009-Ohio-2899, citing *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988); *see also* R.C. 2903.12.

*State v. Martin*, 2018-Ohio-1098, 109 N.E.3d 652, ¶ 8 (8th Dist.); *see State v. Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, ¶ 15-24 (8th Dist.).

{¶ 16} Here, the trial court instructed the jury on the inferior-degree offense of aggravated assault as follows:

> Ladies and gentlemen, you must consider the offense charged in the indictment, felonious assault. You must consider that charge.
>
> If you find that the State proved beyond a reasonable doubt all the essential elements of the offense of felonious assault, your verdict must be guilty as charged.
>
> If you find that the State failed to prove beyond a reasonable doubt all the essential elements of felonious assault, then your verdict must be not guilty of that offense.
>
> You will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the inferior offense of aggravated assault.
>
> If all of you are unable to agree on a verdict of either guilty or not guilty of felonious assault, then you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt all the essential elements of the inferior offense of aggravated assault.
>
> The offense of aggravated assault is distinguished from felonious assault as applied to this case. The elements of the crime of felonious assault are essentially identical to the elements of aggravated assault except for the additional ingredient which I'm about to discuss.
>
> The felonious assault statute provides that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon.
>
> The aggravated assault statute also provides that no person shall knowingly cause or attempt to cause physical harm to another by means of a deadly weapon.
>
> However, aggravated assault is an inferior degree of the offense of felonious assault due to an additional element in mitigation. Aggravated assault is distinguished from felonious assault by the presence of sudden passion or sudden fit of rage on the part of the defendant brought on by serious provocation occasioned by the victim.

(Tr. 712-713, July 9, 2021.)

{¶ 17} James, relying on *Ruppart*, *Martin*, and *State v. Bosley*, 9th Dist. Summit No. 15547, 1992 Ohio App. LEXIS 5206 (Oct. 7, 1992), argues that the foregoing jury instruction is erroneous because a not guilty verdict to felonious assault should have precluded any consideration of aggravated assault. The state argues that these cases are distinguishable. We agree with James and find these cases persuasive and instructive. In fact, these cases address the essence of the issue in the instant case.

{¶ 18} In *Ruppart*, we relied on *Bosley*, and held that a finding of not guilty of felonious assault necessarily precluded a finding of guilty of aggravated assault. We stated that to be found guilty of aggravated assault as an inferior offense of felonious assault, the trier of fact must first find that the state proved the elements of felonious assault beyond a reasonable doubt. Only then does the trier of fact consider whether the defendant proved the mitigating factor of serious provocation by a preponderance of the evidence. If the trier of fact finds that the defendant proved the mitigating circumstance, then the trier of fact can find a defendant guilty of aggravated assault. *Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, at ¶ 33-38, citing 2 *Ohio Jury Instructions*, CR Section 503.11(A)(14) (2009).

{¶ 19} We reasoned that the instructions incorrectly directed the jury to consider aggravated assault only if it found that the state had not proven all the elements of felonious assault, as opposed to the correct instruction which would be to consider aggravated assault only if it found that the state had proven all of the

elements of felonious assault. We quoted the *Ohio Jury Instructions* for a more appropriate instruction:

> "(A) If you find that the state failed to prove beyond a reasonable doubt that the defendant knowingly (caused serious physical harm to [insert name of victim]) (caused or attempted to cause physical harm to [insert name of victim] by means of a deadly weapon or dangerous ordnance), then you must find the defendant not guilty.
>
> (B) If you find that the state proved beyond a reasonable doubt that the defendant knowingly (caused serious physical harm to [insert name of victim]) (caused or attempted to cause physical harm to [insert name of victim] by means of a deadly weapon or dangerous ordnance), and you find that the defendant failed to prove by the greater weight of the evidence that he/she acted while he/she was under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of felonious assault.
>
> "(C) If you find that the state proved beyond a reasonable doubt that the defendant knowingly (caused serious physical harm to [insert name of victim]) (caused or attempted to cause physical harm to [insert name of victim] by means of a deadly weapon or dangerous ordnance), but you also find that the defendant proved by the greater weight of the evidence that he/she acted while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force, then you must find the defendant guilty of aggravated assault." 2 Ohio Jury Instructions (2009), Section 503.11(A)(14).
>
> The comment to this section states, "The Committee recommends that the judge read the appropriate verdict form with each alternative and instruct the jury that it may not sign more than one verdict form on this Count.

*Id.* at ¶ 34-37.

{¶ 20} In *Martin*, we relied on *Ruppart* and held:

> [s]imply put, a finding of not guilty of felonious assault necessarily precludes a finding of guilty of aggravated assault as an inferior offense

of felonious assault. Accordingly, when the trial court found [the defendant] not guilty of felonious assault, it could not, as a matter of law, find him guilty of aggravated assault.

*Martin*, 2018-Ohio-1098, 109 N.E.3d 652, at ¶ 14.

{¶ 21} Similarly, we find that the trial court erred in the instant case when it instructed the jury that they should consider the charge of felonious assault and then consider the charge of aggravated assault regardless of whether they found defendant not guilty of felonious assault. Instead, the court should have instructed the jury to consider the inferior offense of aggravated assault only if it found that the state had proven all the elements of felonious assault. Because a not guilty finding of felonious assault precludes a guilty finding of aggravated assault as an inferior offense of felonious assault, James could not have been convicted of aggravated assault. *Id..*

{¶ 22} We recognize that noticing plain error is a discretionary function of appellate review. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.2d 860, ¶ 22. Based on the facts of this case, we conclude that a miscarriage of justice occurred when the jury found James guilty of aggravated assault since it could not do so, as a matter of law, when it found him not guilty of felonious assault. Indeed, the outcome of the trial would have been different if the trial court gave the jury the proper instruction.

{¶ 23} Accordingly, the first assignment of error is sustained. James's conviction for aggravated assault is vacated and the matter is remand for a new trial on Count 1 (felonious assault).

**B. Sufficiency and Manifest Weight of the Evidence**

{¶ 24} In the second and third assignments of error, James claims his convictions are based on insufficient evidence or, in the alternative, are against the weight of the evidence because there was no evidence that James intended to cause harm to the victims. In light of our disposition of the first assignment of error, our discussion regarding the second and third assigned errors will be limited to the aggravated menacing convictions.

**1. Sufficiency of the Evidence**

{¶ 25} In reviewing a sufficiency challenge, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, citing *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

{¶ 26} James argues that the state "failed to establish that his actions were animated by the intent to cause harm to anyone, a fundamental element of the crimes charged." To sustain a conviction for aggravated menacing, the state had to prove, beyond a reasonable doubt, that James "knowingly cause[d] another to believe that [he] will cause serious physical harm to the person[.]" R.C. 2903.21(A).

{¶ 27} A review of the record in the instant case reveals that James admitted that he charged at the victims while brandishing a knife, telling the victims that he intended to "kill" them. The victims testified to being in fear of James's threats and

retreated to their apartment and locked the door to thwart the attack. Based on this testimony, there is sufficient evidence in the record to sustain the aggravated menacing convictions. When viewing this evidence in a light most favorable to the state, any rational trier of fact could have found the essential elements of aggravated menacing proven beyond a reasonable doubt.

### 2. Manifest Weight of the Evidence

{¶ 28} A claim that a verdict is against the weight of the evidence involves a separate and distinct test that is much broader than the test for sufficiency. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 193. In contrast to sufficiency of the evidence, "[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence'[.]" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). While "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *Id.* The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v.*

*Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). "'The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

{¶ 29} James challenges the credibility of the witnesses, arguing that the victims' testimony was not credible because the pocketknife that was recovered by the police differed from the kitchen knife description given by the victims. We note that a verdict is not against the weight of the evidence solely because the jury heard inconsistent testimony. *State v. Rodriguez*, 8th Dist. Cuyahoga No. 109320, 2021-Ohio-2580, ¶ 29, citing *State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387. "'The trier of fact may take note of any inconsistencies and resolve them, accordingly, choosing to believe all, none, or some of a witness's testimony.'" *Id.*, quoting *State v. Shutes*, 8th Dist. Cuyahoga No. 105694, 2018-Ohio-2188, ¶ 49. Here, the jury heard testimony from the victims that James attacked them with a knife. They also heard James testify that he pulled out his knife after he was splashed with the dirty mop water and confronted by J.S. with the mop. The jury chose to believe the victims' testimony. Based on the record, we cannot say that the jury clearly lost its way. Therefore, we find that the aggravated menacing convictions are not against the weight of the evidence.

{¶ 30} Accordingly, the second and third assignments of error are overruled.

### C. Ineffective Assistance of Counsel

{¶ 31} In the fourth assignment of error, James claims that his trial counsel rendered ineffective assistance by focusing on a claim of self-defense throughout "the entire trial" instead of trying to disprove James's intent to cause harm. According to James, because the trial court denied his motion to instruct the jury on self-defense, he has conclusively proven that trial counsel pursued the wrong defense at trial.

{¶ 32} To establish ineffective assistance of counsel, James must demonstrate that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 33} James's arguments are predicated on an assumption that trial counsel's "entire trial strategy" was focused on setting up a claim of self-defense. According to James, when the trial court denied the motion to instruct the jury, James's trial strategy had to shift, causing the jury to render a prejudicial verdict based on its consideration of contradictory defense theories. James, however, provides no citations from the trial transcript demonstrating that the sole trial strategy was to prove self-defense as required by App.R. 16(A)(7). Furthermore,

James's own testimony was the basis of the self-defense request. James failed to demonstrate how the request for this instruction negatively impacted the trial. As a result, we cannot conclude that James was deprived of a fair trial.

{¶ 34} Therefore, the fourth assignment of error is overruled.

## III. Conclusion

{¶ 35} James's convictions for aggravated menacing are affirmed. James's conviction for aggravated assault, the inferior offense of felonious assault, is vacated, and the matter is remanded for a new trial on this count.

{¶ 36} Accordingly, judgment is affirmed in part, vacated in part, and the matter remanded for a new trial on Count 1 (felonious assault).

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EMANUELLA D. GROVES, J., CONCURS;
SEAN C. GALLAGHER, A.J., DISSENTS IN PART WITH SEPARATE OPINION ATTACHED

SEAN C. GALLAGHER, A.J., DISSENTING IN PART:

{¶ 37} The majority decision to reverse the conviction and remand for a new trial is transforming a simple error into a structural error, relieving the defendant of the burden of demonstrating substantial prejudice and a manifest miscarriage of justice as a result of the error. Because this contravenes Ohio Supreme Court precedent and is based on arguments not presented by James in this appeal, I dissent in part. I would affirm the convictions.

{¶ 38} James's argument elevates a simple jury-instruction error into structural error devoid of any discussion of the substantial rights prejudice that affects the outcome of the proceeding or creates a miscarriage of justice. Structural errors are errors that "'affect[] the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself.'" *State v. West*, Slip Opinion No. 2022-Ohio-1556, ¶ 25, quoting *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643 ¶ 17, *State v. Fisher*, 99 Ohio St.3d 127, 2003-Ohio-2761, 789 N.E.2d 222, ¶ 9, and *Arizona v. Fulminante*, 499 U.S. 279, 309-310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Structural errors require reversal irrespective of any other consideration. *Id.*

{¶ 39} Without a doubt there is an error in the trial process. The sole question is whether that error has been demonstrated to affect James's substantial rights and resulted in a manifest miscarriage of justice under Crim.R. 52(B). Tellingly, James was unable to present an argument to demonstrate either such

point. He seems content to focus on the error itself and presume the rest. App.R. 16(A)(7).

{¶ 40} Under plain error review, it is James's obligation to demonstrate that the error not only affected his substantial rights, but created a miscarriage of justice. *West*, Slip Opinion No. 2022-Ohio-1556, at ¶ 2, citing *Rogers,* 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 24. And even then, this court has discretion as to whether to notice any such error. Instead of undertaking that analysis, the majority simply finds error and declares that the error affected a substantial right creating a miscarriage of justice despite James's failure to present any analysis or discussion on the entirety of the standard of review. *See, e.g., State v. Rogers*, 2013-Ohio-3235, 994 N.E.2d 499, ¶ 46 (8th Dist.), overruled by *Rogers* (finding plain error based in part on the fact that the error could only be corrected through an ineffective assistance of counsel claim for failing to timely raise the merger issue). The majority decision is essentially creating structural error not subject to plain error review at the expense of *West* and *Rogers*, at ¶ 3-5 (the Eighth District erred by shifting the burden away from the defendant to demonstrate plain error).

{¶ 41} This is not a criticism of this particular result, as will be further discussed. Other panels from this district sent us down this path; today's decision arguably demonstrates the ubiquity with which panels find plain error despite the failure to object or demonstrate substantial prejudice or a manifest miscarriage of justice. Be that as it may, it is time we as a district recognize the plain error standard in this particular situation instead of responding by reversing every conviction in

which the same error arises, in effect declaring the existence of structural error when a trial court improperly handles an inferior offense during trial.

{¶ 42} In the first assignment of error, James claims that the trial court erred by instructing the jury to consider the inferior-degree offense of aggravated assault after finding him not guilty of felonious assault. Throughout the trial, the aggravated assault offense was treated as a lesser included offense of the felonious assault, as charged in Count 1 of the indictment, with the trial court referring to the aggravated assault as a "lesser inferior offense." At no point did James ever object to the trial court's characterization of the issue or the instruction at issue, forfeiting the error for appellate review.

{¶ 43} There was an error in the proceeding in this case, on that there is no doubt.

{¶ 44} Lesser included offenses are distinct from inferior-degree offenses. In determining whether an offense is a lesser included offense of a greater offense, "a court shall consider whether one offense carries a greater penalty than the other, whether some element of the greater offense is not required to prove commission of the lesser offense, and whether the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed." *State v. Evans,* 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 26. "An offense qualifies as a lesser included offense when 'the greater offense as statutorily defined cannot be committed without the lesser offense as statutorily defined also being committed.'" *State v. Owens,* 162 Ohio St.3d 596, 2020-Ohio-4616, 166

N.E.3d 1142, ¶ 8, quoting *Evans* at ¶ 26. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *Deem,* 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), at paragraph two of the syllabus. An inferior-degree offense, on the other hand, shares elements that are identical to or contained within the greater offense, except for one or more additional mitigating elements. *Id.* at paragraph two of the syllabus, citing Crim.R. 31(C) and R.C. 2945.74; s*ee also Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, at ¶ 14.

{¶ 45} In other words, a lesser included offense shares the same elements of the greater offense except for the deletion of an aggravating element, the absence of which lessens the severity of the offense, whereas the inferior-degree offense shares the same elements as the greater offense with the inclusion of an additional mitigating factor that lessens the severity of the offense. This distinction leads to two different procedural processes with respect to jury instructions and verdicts in general.

{¶ 46} The trial court in this case instructed the jury on the inferior-degree offense of aggravated assault mimicking the standard-form jury instruction for lesser included offenses. 2 *Ohio Jury Instructions*, CR Section 425.09 (2020).[2] This lesser included offense instruction recognizes the possibility that an offender can be

---

[2] "The Ohio Jury Instructions, while not binding legal authority, are helpful as an example of the generally accepted interpretation of the aggravated burglary statute in Ohio." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 97 (Lanzinger, J., dissenting).

simultaneously acquitted of the greater offense while being found guilty of the lesser included offenses. *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of syllabus (A jury instruction on a lesser included offense "is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."). In that situation, the jury could find the absence of proof on the aggravating element in finding the offender not guilty of the greater offense, and therefore, a finding of guilt on the lesser included offense remains a possibility.

{¶ 47} Unlike a lesser included offense, an inferior-degree offense includes a mitigating element not shared with the greater offense — thus the defendant must necessarily have been found guilty of the greater offense before considering the applicability of the inferior-degree offense. 2 *Ohio Jury Instructions*, CR 503.11(A)(14) (2020). This instruction recognizes that an acquittal of the greater offense necessarily impacts the inferior-degree offense since they share the same core elements.

{¶ 48} It is only after finding the offender guilty of the greater offense that the trier of fact must consider the inferior-degree offense before rendering its verdict on that count. Through an act of judicial fiction, if serious provocation is demonstrated beyond a reasonable doubt, the defendant *is not found guilty* of the greater offense but guilty of the inferior-degree offense even though the state proved the elements of both offenses beyond a reasonable doubt. *State v. Black*, 1st Dist. Hamilton No. C-160321, 2017-Ohio-5611, ¶ 26 (If "it is possible for the trier of fact

to find the defendant guilty of the inferior-degree offense and to acquit on the greater offense because of the provocation, the instruction on the inferior-degree offense should be given.").

{¶ 49} Thus, in all cases in which the inferior offense is proven, it must be recognized that the offender is not found guilty of the greater offense in order to enter the finding of guilt on the inferior offense — otherwise, the finding of guilt as to both offenses violates Eighth Amendment principles. The fact the jury expressly did so in this case instead of silently through an act of judicial fiction is not dispositive, but actually demonstrates that the result of the trial would not have been different had they been properly instructed — James was found guilty of each and every element of aggravated assault by the empaneled jury.

{¶ 50} This brings us to the heart of the matter.

{¶ 51} The jury, although incorrectly instructed, correctly followed the given instructions in executing the jury verdict forms, finding James not guilty of felonious assault before considering the aggravated assault elements. James failed to object or seek a correction to the instructions or the verdict forms, although the court and the parties discussed the potential jury instructions before the jury was charged. Tr. 638:1-6. James concedes that our review is limited to the plain error standard of review under Crim.R. 52(B); however, his entire argument focuses on the error and nothing more.

{¶ 52} It is well settled that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury

retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Crim.R. 30(A). "When a defendant fails to object to the jury instructions, she waives all but plain error." *Owens*, 162 Ohio St.3d 596, 2020-Ohio-4616, 166 N.E.3d 1142, at ¶ 7, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 127; *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 109, citing *State v. Wade*, 53 Ohio St.2d 182, 373 N.E.2d 1244 (1978), paragraph one of the syllabus; *State v. Childs*, 14 Ohio St.2d 56, 236 N.E.2d 545 (1968), paragraph three of the syllabus. "[P]lain error is 'an "obvious" defect in the trial proceedings.'" *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, 157 N.E.3d 716, ¶ 72, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

{¶ 53} It is not enough, however, to find the existence of any error under Crim.R. 52(B). In order for a court of review to reverse on plain error, the defendant must demonstrate that the error "'affected [his] 'substantial rights,' which 'mean[s] that the trial court's error must have affected the outcome of the trial.'" *Id.*, quoting *Barnes* at 27; *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 22. And "even if an accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it." *Rogers* at ¶ 23. As the Ohio Supreme Court has repeatedly admonished, plain error must be noticed "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Id.*, quoting *Barnes* at 27, and *Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), at paragraph three of the syllabus.

{¶ 54} As a result, the sole issue in this appeal is whether the error in instructing the jury prejudiced James to such an extent that the plain error must be noticed and a new trial ordered. *See, e.g., State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 75 (concluding that the error in providing an erroneous jury instruction confusing an inferior-degree offense with a lesser included offense did not constitute plain error); *State v. Blevins*, 2019-Ohio-2744, 140 N.E.3d 27, ¶ 26-35 (4th Dist.).

{¶ 55} Since James has not presented any discussion beyond demonstrating the existence of an error, our inquiry should be at an end. "[A]ppellate courts do not sit as self-directed boards of legal inquiry and research, but preside essentially as arbiters of legal questions presented and argued by the parties before them." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 19, quoting *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part). It is not our obligation or our role to craft the missing analysis on James's behalf.

{¶ 56} This court has essentially created structural error in this situation, permitting the reversal upon the mere demonstration that the trial court improperly instructed the jury. *See, e.g., Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, at ¶ 38 (8th Dist.) (finding plain error based on treating the inferior-degree offense of aggravated assault as a lesser included offense in the jury instructions); *Martin*, 2018-Ohio-1098, 109 N.E.3d 652, at ¶ 15 (trial court in a bench trial erred in finding that the state failed to prove felonious assault beyond a

reasonable doubt but entering a guilty verdict on the inferior-degree offense of aggravated assault nonetheless); *see also Bosley*, 9th Dist. Summit No. 15547, 1992 Ohio App. LEXIS 5206 (Oct. 7, 1992). Noticing plain error is a discretionary function of appellate review. *Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 86, 0at ¶ 22. Demonstrating the existence of error is not sufficient to meet the defendant's appellate burden demonstrating the need to reverse under the plain error standard of review in every case. The fact that other panels exercised their discretion in noticing the plain error is not dispositive and simply demonstrates the slow death of plain error review on this topic as the structural error rises from the ashes in its place.

{¶ 57} For the foregoing reasons, I dissent from the majority's decision to reverse the conviction. James has not presented any analysis or discussion regarding anything other than his conclusion that an error occurred. Under binding precedent, this is insufficient to warrant the noticing of plain error. That other panels chose to elevate plain error into structural error should not impede our analysis. We have a choice as to whether the error should be noticed as plain error under *Rogers*. I would affirm the convictions in the hopes that any semblance of plain error review is restored in these types of cases.