[Cite as *State v. Wadlington*, 2024-Ohio-1268.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,              :

                            No. 112286

    v.                                      :

DIANA WADLINGTON,                       :

    Defendant-Appellant.             :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 4, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664506-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Gregory Paul, Assistant Prosecuting Attorney, *for appellee.*

Russell S. Bensing, *for appellant.*

MARY J. BOYLE, J.:

{¶ 1} This appeal arises from the shooting death of Allen Randall ("victim"). Following a jury trial, defendant-appellant, Diana Wadlington ("Wadlington"), was convicted of one count of murder and two counts of felonious assault, with the accompanying one- and three-year firearm specifications.

Wadlington appeals her convictions, arguing that the victim's prior convictions[1] should have been admitted and the jury should have been instructed on aggravated assault, as well as involuntary manslaughter.  For the reasons set forth below, we affirm.

## I. Facts and Procedural History

{¶ 2} In November 2021, Wadlington was charged in a six-count indictment that included one count of aggravated murder; one count of murder; one count of felony murder; one count of voluntary manslaughter; and two counts of felonious assault.  All counts carried both a one- and three- firearm specification.

{¶ 3}  The matter proceeded to jury trial.  During trial, the court granted the state's motion in limine, limiting the admissibility of the victim's prior criminal history.  The trial court ruled that only "actual knowledge [Wadlington] had with respect to what occurred that night and her personal knowledge, if any at all, of specific instances with respect to her" was to be admitted into evidence.  (Tr. 971.) The following is a summary of the evidence presented.

{¶ 4}  On the evening of October 19, 2021, Wadlington and the victim were hanging out together trying to find some marijuana.  The two stopped at the victim's brother's house for a short time and then left.  According to the brother, the victim intended to drop Wadlington off at home and return to his house.

---

[1]The parties use the words "prior conviction," "prior criminal history," and "specific instances of conduct" interchangeably.  This court will address the issue as the victim's prior criminal history or specific instances of conduct because the conduct referred to includes convictions, dismissed charges, as well as charges that were pending at the time of the victim's death.

{¶ 5} After leaving his brother's house, around 10:00 p.m., the victim called his ex-girlfriend Briana Lawson ("Lawson") on FaceTime with Wadlington still in the car. Lawson testified that the victim was in a good mood, acting goofy, and laughing; he showed no signs of anger. During this call, Wadlington took the phone and told Lawson, "Sweetheart, I'm sorry, I don't know why he called you, but I just wanted to let you know that we're fucking and sucking the same n****." (Tr. 665.)

{¶ 6} Shortly after the call to Lawson, at approximately 10:30 p.m., the victim appeared at his grandmother's house on East 128th Street, which is a few blocks from Wadlington's home. He walked there alone. His cousin Alexus Randall ("Alexus") testified that the victim asked to use her phone because Wadlington threw the victim's phone and keys into a field near Wadlington's house and the victim was having trouble finding them. Alexus testified that the victim was joking around at this time. The victim left, and Alexus repeatedly called the victim's phone so he could find it. When the victim answered Alexus's call, she heard Wadlington in the background yelling, "I'll kill you. I'll kill you right now." Alexus heard the victim reply jokingly, "Kill me then." (Tr. 687.)

{¶ 7} Brittney Randall ("Brittany"), the victim's cousin, testified that she also called the victim after Alexus told Brittany that she heard Wadlington's threats. When the victim answered, Brittany overheard Wadlington screaming "at the top of her lungs" calling the victim a liar and saying that she was going to shoot him. Brittney testified that she heard the victim say, "If you are going to shoot me, you're

going to have to shoot me. I don't have anything on me, but I am not about to beg you, so do what you have to do." (Tr. 868.)

{¶ 8} At 10:37 p.m., Cleveland Police Officer Michael Deighan ("Officer Deighan") and his partner received a call from dispatch regarding shots fired at East 128th Street and Locke Avenue in Cleveland, Ohio. A few blocks from that area, the officers discovered a silver sedan crashed into a streetlight pole. As Officer Deighan approached the vehicle, he observed the victim slumped over with a noticeable amount of blood in the car. The victim had suffered a gunshot wound to his hand and chest. He had a weak pulse and was taken by paramedics to University Hospitals Cleveland Medical Center where he passed away that night.

{¶ 9} At approximately 10:52 p.m., Wadlington called 911 and admitted she shot the victim. Police then arrived at her residence on Locke Avenue and placed her under arrest. She waived her constitutional rights and spoke with Cleveland Police Officer Trevor Smith ("Officer Smith"), which was recorded on his bodycam and played for the jury. In this interview, she told Officer Smith that she and the victim argued in his car, then she got out of the car, went inside her house, and got her gun because she was scared. She came back outside with the gun and told the victim repeatedly to leave. Wadlington told Officer Smith that the victim tried to grab her and slap her and tried to grab the gun, "so I end up just shooting him." She said, "[H]e attacked me." (State's exhibit No. 211). She also told Officer Smith that he ripped her clip-on ponytail off and said they could find it and her gun in her house.

{¶ 10} Officer Smith testified that Wadlington was disheveled and distraught but he did not observe any injuries to her. Wadlington's clothes were covered in blood. Officers recovered one spent cartridge casing in the middle of the street, along with a blood trail. A 9 mm semiautomatic pistol with blood on it was retrieved from Wadlington's home. DNA testing revealed that the victim's blood was found on Wadlington and her gun. The clip-on ponytail was never found.

{¶ 11} Cleveland Police Detective Charles Shultz ("Detective Shultz") testified to his investigation and Wadlington's phone records, which indicated that she made several phone calls before and after she called 911. Her text messages revealed a text from her sister, Tonae Bolton ("Bolton"), which stated: "Don't say he was chasing you, say that he tried to attack you."

{¶ 12} Bolton testified for the defense. Bolton is Wadlington's older sister and spoke with her after the shooting, but before she called 911. She explained her text to Wadlington, saying that "people of color sometimes explain things differently" and she "wanted to make sure that it was just accurate language, universal language, I would say." (Tr. 1065). On cross-examination, Bolton testified that she searched the computer for Ohio's self-defense law but was not trying to coach her sister.

{¶ 13} Wadlington testified on her own behalf, stating that she had been friends with the victim for about two years and that they hung out with each other a couple times a week. On that evening, they went to his brother's house to smoke marijuana, but his brother did not have any. On the way back to her house,

Wadlington stated that they argued because the victim called her family "snitches." She testified that he pulled his car behind hers to block her from leaving her home. Wadlington testified that she went inside her house and the victim left in his car. Wadlington denied throwing the victim's keys and phone.

{¶ 14} Wadlington stated that while she was inside, she charged her phone and grabbed her gun. She testified that she was inside for five to seven minutes. Wadlington stated that she felt scared walking back outside but needed to pick up her daughter. She testified that she always brings her gun with her at night. She stated that she observed the victim outside and he approached her. The victim told her he was going to beat her up and shoot up her house. She stated that "he was just yelling threats, all type of threats." (Tr. 1097.) Wadlington testified that the victim said, "I'm going to beat your a**. You talk too much. I'm going to shut you up." (Tr. 1145.) Wadlington explained that the victim grabbed, pushed, and pulled her clip-on ponytail off. She testified that she shot him because she was scared.

{¶ 15} Wadlington denied having a sexual relationship with the victim and denied talking to Lawson on FaceTime. Wadlington also testified that she and the victim had gotten into a physical altercation a couple months before this incident, but could not recall when, where, or why they fought. Wadlington testified that she had seen the victim with a gun on a few occasions but did not see a gun on him that evening.

{¶ 16} At the close of the case, the state dismissed the voluntary manslaughter count. The court denied Wadlington's request for instructions on

aggravated assault and involuntary manslaughter. The jury was instructed on self-defense. Wadlington was found not guilty of aggravated murder and murder and guilty of the felony murder and two counts of felonious assault, as well as the accompanying firearm specifications. She was sentenced to 18 years to life in prison.

{¶ 17} Wadlington now appeals, raising the following assignments of error for review:

> **Assignment of Error I:** In a case in which self-defense was the primary issue, the trial court erred in precluding [Wadlington] from testifying as to her knowledge of the victim's prior convictions of violent crimes.
>
> **Assignment of Error II:** The trial court erred in denying the defendant an instruction of the lesser offense of involuntary manslaughter as a third-degree felony, and the inferior offense of aggravated assault.

## II. Law and Analysis

### A. Precluding Specific Instances of Conduct was not Error

{¶ 18} In the first assignment of error, Wadlington argues that because she was asserting self-defense, the victim's prior convictions should have been admitted because it went to her state of mind, not the character of the victim. The state argues that the trial court properly limited her testimony to her personal knowledge and any specific instances that involved Wadlington.

{¶ 19} It is well-settled that the admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). An abuse of discretion occurs when a court exercises "its

judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. As the gatekeeper of the evidence, the trial court "must be cognizant of the evidence the state is attempting to admit into evidence. If the state fails to comport with the basic requirements under the law, the trial court is obligated to exclude such evidence, even if no objection is raised." *State v. Walker*, 8th Dist. Cuyahoga No. 110741, 2022-Ohio-1238, ¶ 32.

{¶ 20} A self-defense claim includes the following elements:

"(1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he [or she] was in imminent danger of death or great bodily harm and that his [or her] only means of escape from such danger was in the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger."

*State v. Messenger*, 171 Ohio St.3d 227, 2022-Ohio-4562, 216 N.E.3d 653, ¶ 14, quoting *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

{¶ 21} Evid.R. 404(A) provides that, though it may be relevant, "[e]vidence of a person's character or a trait of character is *not* admissible for the purpose of proving action in conformity therewith on a particular occasion." (Emphasis added.) "The term 'character' refers to a generalized description of a person's disposition or a general trait such as honesty, temperance, or peacefulness. Generally speaking, character refers to an aspect of an individual's personality which is usually described in evidentiary law as a 'propensity.'" *State v. Herron*, 2d Dist. Montgomery No. 28146, 2019-Ohio-3292, ¶ 25-26, quoting *Weissenberger's*

*Ohio Evidence Treatise*, Section 404.3 (2009 Ed.). This admonition applies to the victim's character as well. *See* Evid.R. 404(A)(2).

{¶ 22} Nevertheless, character evidence is admissible in certain circumstances. Evid.R. 405 sets forth when it is admissible and two methods by which character may be proved. Evid.R. 405 states:

> (A) Reputation or Opinion. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

> (B) Specific Instances of Conduct. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

{¶ 23} In *Barnes*, the Ohio Supreme Court held that "[a] defendant asserting self-defense cannot introduce evidence of specific instances of a victim's conduct to prove that the victim was the initial aggressor." *Barnes,* 94 Ohio St.3d 21, 24, 759 N.E.2d 1240, at syllabus, citing Evid.R. 404(A) and 405. Both parties agree that Wadlington cannot introduce specific instances of the victim's conduct to prove that he was the initial aggressor.

{¶ 24} The parties also agree "that a defendant arguing self-defense may testify about [her] knowledge of specific instances of the victim's prior conduct in order to establish the defendant's state of mind at the time of the incident." *In re D.N.*, 195 Ohio App.3d 552, 2011-Ohio-5494, 960 N.E.2d 1063, ¶ 15 (8th Dist.), quoting *State v. Baker*, 88 Ohio App.3d 204, 208, 623 N.E.2d 672 (9th Dist.1993);

*State v. Carlson*, 31 Ohio App.3d 72, 508 N.E.2d 999 (8th Dist.1986).[2] The parties disagree, however, on whether this includes criminal conduct known to Wadlington that does not involve her.

{¶ 25}Wadlington proffered she was aware the victim had recently been pulled over and had "caught a gun case" and had a domestic violence case in the past but did not know the details. (Tr. 1150.) At the time of his death, the victim was charged with having weapons while under disability, receiving stolen property, and improperly handling firearms in a motor vehicle.[3] Previously, in 2016, the victim was charged with domestic violence in two separate cases, neither of which he was convicted.[4] Wadlington's proffered testimony was excluded, as well as the

---

[2] Several other Ohio appellate districts have interpreted Evid.R. 405 to permit a defendant to "testify about specific instances of the victim's prior conduct known to the defendant in order to establish the defendant's state of mind." *State v. Steinhauer*, 4th Dist. Scioto No. 12CA3528, 2014-Ohio-1981, ¶ 30, citing *State v. Moore*, 3d Dist. Allen Nos. 1-06-89 and 1-06-96, 2007-Ohio-3600, ¶ 59; *see also State v. Krug*, 11th Dist. Lake No. 2008-L-085, 2009-Ohio-3815, ¶ 60; *State v. Salyers*, 2d Dist. Montgomery No. 20695, 2005-Ohio-2772, ¶ 32; *State v. Davis,* 5th Dist. Stark No. 2003 CA 429, 2004-Ohio-7056, ¶ 19; *State v. Mason*, 6th Dist. Lucas Nos. L-02-1189 and L-02-1211, 2003-Ohio-5974, ¶ 36.

[3] *State v. Randall,* Cuyahoga C.P. No. CR-21-664124-A (Nov. 1, 2021), was abated by death. Although the dockets of the victim's cases are not part of our appellate record, we may take judicial notice of the docket entries. *Zhong v. Liang*, 2020-Ohio-3724, 155 N.E.3d 1042, ¶ 20 (8th Dist.), citing *State v. Cuyahoga Cty. Common Pleas Court*, 8th Dist. Cuyahoga No. 108974, 2019-Ohio-3782, ¶ 5.

[4] *See State v. Randall,* Cuyahoga C.P. No. CR-16-612122-A (May 16, 2017), and *State v. Randall*, Cuyahoga C.P. No. CR-16-603258-A (June 27, 2016).

victim's pending aggravated burglary charge, and a felonious assault conviction from 2005.[5]

{¶ 26}We find that the trial court did not abuse its discretion when it excluded the pending aggravated burglary charge and the felonious assault conviction. Because Wadlington was unaware of those cases, they could not have influenced her state of mind at the time of the shooting. *See State v. Lane*, 48 Ohio App.3d 172, 549 N.E.2d 193 (1st Dist.1988) (finding that the exclusion of the victim's juvenile record was proper because there was no showing the accused was aware of said record); *see also State v. Sutton*, 12th Dist. Butler No. CA90-01-001, 1991 Ohio App. LEXIS 3115, 14 (July 1, 1991).

{¶ 27} Turning to the victim's pending gun case and the dismissed domestic violence charges, Wadlington argues that these are admissible to prove that she knew the victim carried a gun and that he had previously allegedly attacked a woman. Wadlington relies on *Carlson* for this argument.

{¶ 28}In *Carlson*, the defendant was charged with felonious assault. He admitted that he shot the victim but asserted self-defense. *Carlson*, 31 Ohio App.3d at 72. The defendant testified that the victim was drunk and upset when he was told to leave the bar. The victim threw a can of beer at defendant's head and started to climb over the bar while threatening to kill the defendant. When the victim went towards the defendant, he shot the victim. *Id.* At trial, the defendant was precluded

---

[5] *See State v. Randall*, Cuyahoga C.P. No. CR-20-651699-A (Nov. 1, 2021), and *State v. Randall,* Cuyahoga C.P. No. CR-05-471603-A (Feb. 26, 2007).

from testifying about the prior violent acts of the victim that defendant was aware of at the time of the shooting. This included what defendant had himself witnessed of victim's violent behavior at other bars. This court ruled that excluding such testimony was prejudicial to the defense because it went directly to the defendant's state of mind and "tended to show that the [defendant] feared the victim." *Id.* at 73. This court stated that "[t]hese events are admissible in evidence, not because they establish something about the victim's character, but because they tend to show why the defendant believed the victim would kill or severely injure him." *Id.* at 73, citing *State v. Randle*, 69 Ohio App.2d 71, 73, 430 N.E. 2d 951 (10th Dist.1980).

{¶ 29} We find the facts in this case distinguishable from *Carlson*. Wadlington testified she and the victim were friends for nearly two years and they were together a couple times a week; she said she was comfortable with him. She alleged they had one prior physical altercation in which they both slapped and punched each other. She said she did not see a doctor or press charges because "it was not that serious at that time." (Tr. 1090-1091.) No gun was involved. She could not remember where, when, or why it happened. She testified that they remained friends. On cross-examination, Wadlington told detectives on the night of the shooting that "[n]othing like this ever happened before. Never got physical before." (Tr. 1119.) Wadlington did not testify that she was afraid of the victim before, during, or after the alleged altercation. She proffered that she did not know the details of the domestic violence charges.

{¶ 30} Wadlington was permitted to testify and did testify that she observed the victim carrying a firearm on a couple of occasions. Nevertheless, she testified that she did not see a gun on the victim the night he died. This is not a situation where Wadlington was afraid of the victim on any other occasion or for any other reason. Therefore, the trial court did not abuse its discretion when it excluded the victim's pending gun case or the dismissed domestic violence cases because they did not tend to demonstrate that Wadlington feared the victim because of these cases.

{¶ 31} Accordingly, Wadlington's first assignment of error is overruled.

**B. The Jury Instructions Were Proper**

{¶ 32} In the second assignment of error, Wadlington asserts that the trial court should have instructed on the inferior offense of aggravated assault and, thus, the lesser included offense of involuntary manslaughter because Wadlington was under substantial provocation at the time of the shooting. The state argues that Wadlington testified that she was in fear and fear is incompatible with the mental state of rage, which is the required mental state for aggravated assault. The state further argues that an instruction on aggravated assault is inconsistent with Wadlington's argument of self-defense. We find the state's argument more persuasive.

{¶ 33} "When reviewing a trial court's jury instructions, the proper standard of review for an appellate court is whether the trial court's refusal to give a requested instruction constituted an abuse of discretion under the facts and

circumstances of the case." *State v. Gibson*, 2023-Ohio-2481, 221 N.E.3d 984, ¶ 98 (8th Dist.), quoting *State v. Sims*, 8th Dist. Cuyahoga No. 85608, 2005-Ohio-5846, ¶ 12, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Generally, "a charge on a lesser-included or inferior offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included or inferior offense." *State v. Carter*, 2018-Ohio-3671, 119 N.E.3d 896, ¶ 59 (8th Dist.), citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. In determining whether a lesser-included or inferior offense instruction is appropriate, the trial court must view the evidence in the light most favorable to the defendant. *Id.* at ¶ 59, citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. An instruction is not warranted, however, every time "some evidence" is presented on a lesser-included or inferior offense. *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992).

> "To require an instruction * * * every time some evidence, however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser-included (or inferior-degree) offense."

*Id.*, quoting *Shane* at 633. Thus, a court must find there is sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior offense. *Shane* at 632-633.

{¶ 34} In *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), the Ohio Supreme Court distinguished between a lesser-included offense and an offense that is an "inferior degree" of the indicted offense. "An offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *Id.* at paragraph two of the syllabus, citing R.C. 2945.74 and Crim.R. 31(C); *State v. James*, 8th Dist. Cuyahoga No. 110812, 2022-Ohio-2040, ¶ 14-15.

{¶ 35} Regarding felonious assault and aggravated assault, our court has stated:

> It is well settled that aggravated assault is not a lesser-included offense of felonious assault. Instead, aggravated assault is an inferior degree of felonious assault because its elements are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim. *State v. Searles*, 8th Dist. Cuyahoga No. 96549, 2011-Ohio-6275, citing *State v. Logan*, 10th Dist. Franklin No. 08AP-881, 2009-Ohio-2899, citing *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988); *see also* R.C. 2903.12.

*State v. Martin*, 2018-Ohio-1098, 109 N.E.3d 652, ¶ 8 (8th Dist.); *see State v. Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627, ¶ 15-24 (8th Dist.).

{¶ 36} Involuntary manslaughter is a lesser-included offense of felony murder under R.C. 2903.02(B). *Thomas* at 215. "[I]nvoluntary manslaughter under R.C. 2903.04(A), which states 'no person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a

felony,' is almost identically worded as the felony murder statute but expands the definition to include any felony offense, instead of limiting the predicate crime to a first- or second-degree felony offense of violence." *State v. Rider*, 2d Dist. Champaign No. 2021-CA-12, 2022-Ohio-1964, ¶ 41. The lesser included jury instruction on involuntary manslaughter is only warranted in situations where the felony murder cannot be proven because there is a lack of evidence establishing that the underlying criminal act was a first- or second-degree offense of violence. *State v. Duncan*, 8th Dist. Cuyahoga No. 87220, 2006-Ohio-5009, ¶ 5; *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 20. Thus, if the jury found Wadlington guilty of aggravated assault, a felony of the fourth degree, rather than felonious assault, a felony of the second degree, it would necessarily be limited to a conviction for involuntary manslaughter.

{¶ 37} Wadlington argues that there was sufficient provocation to warrant an instruction on aggravated assault regardless of her claim of self-defense, asserting that when a reasonable juror could find provocation and reject self-defense, the court must give the provocation instruction. The state argues that Wadlington repeatedly testified that she shot the victim because she was afraid and the mental state of fear is inconsistent with the mental state of rage.

{¶ 38} In *State v. Mack*, 82 Ohio St.3d 198, 694 N.E.2d 1328 (1998), the Ohio Supreme Court explained that to instruct on the inferior offense of aggravated assault, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. The

provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." If the provocation is sufficient, then the analysis shifts to a subjective standard to determine whether this particular defendant was "actually was under the influence of sudden passion or in a sudden fit of rage." *Id.*, citing *Shane,* 63 Ohio St.3d at 634-635, 590 N.E.2d 272.

{¶ 39} This court has stated that "[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." *State v. Almashni*, 8th Dist. Cuyahoga No. 92237, 2010-Ohio-898, ¶ 38-39, citing *Shane* at paragraph two of the syllabus. Further, "fear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." *Id.*, *see State v. Collins*, 97 Ohio App.3d 438, 445-446, 646 N.E.2d 1142 (8th Dist.1994); *State v. Williams*, 8th Dist. Cuyahoga No. 60819, 1992 Ohio App. LEXIS 4159 (Aug. 13, 1992). Moreover, this court has recognized that aggravated assault is incompatible with a theory of self-defense because self-defense requires proof of fear while aggravated assault requires a showing of a sudden passion or rage. *State v. Hughkeith*, 2023-Ohio-1217, 212 N.E.3d 1147, ¶ 102 (8th Dist.), *see also State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 47 ("'[I]t has been held that in most cases, jury instructions on both self-defense and serious provocation are inconsistent' because 'the mental states of fear as required for self-defense and rage as required for aggravated assault are incompatible'"), quoting *State v. Crim*, 8th Dist. Cuyahoga No. 82347, 2004-Ohio-2553, ¶ 14; *State v. Betliskey*, 8th Dist. Cuyahoga No.

101330, 2015-Ohio-1821, ¶ 24 (jury instruction on aggravated assault not required where defense theory was self-defense); *State v. Loyed*, 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, ¶ 14 (instruction on voluntary manslaughter not required where defense asserted self-defense because the theories were incompatible and "it must be one or the other").

{¶ 40} Wadlington testified that the victim was making "all types of threats," specifically, "You talk too much. I am going to shut you up." She testified that the victim did not have a gun on him, but she did. Wadlington repeatedly and consistently testified that she was in fear and that is why she shot the victim. We find that there is no evidence in the record of sufficient provocation by the victim to arouse the passions of an ordinary person beyond her power or control. Therefore, the trial court did not abuse its discretion when it refused to give an instruction on aggravated assault. Furthermore, because involuntary manslaughter is dependent upon a finding of aggravated assault, on the facts of this case, it was not error for the court to deny the instruction.

{¶ 41} Accordingly, Wadlington's second assignment of error is overruled.

### III. Conclusion

{¶ 42} The trial court did not abuse its discretion when it limited the victim's specific instances of conduct to those incidents known to Wadlington that tended to influence her state of mind. Further, the trial court did not abuse its discretion when it did not instruct on aggravated assault or involuntary manslaughter because there was no evidence in the record that Wadlington was provoked into a fit of rage.

Rather, Wadlington repeatedly testified that she shot the victim out of fear, which is the mental state for self-defense.

{¶ 43} Accordingly, the judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR