[Cite as *State v. Price*, 2025-Ohio-2218.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                    :

                                         No. 113540

    v.                                                  :

KRISTON PRICE,                                  :

    Defendant-Appellant.                 :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** APPLICATION DENIED
**RELEASED AND JOURNALIZED:** June 18, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672959-A
Application for Reopening
Motion No. 582261

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Tyler W. Blair, Assistant Prosecuting Attorney, *for appellee.*

Kimberly Kendall Corral and Gabrielle M. Ploplis, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Applicant Kriston Price seeks to reopen his appeal in *State v. Price*, 2024-Ohio-5598 (8th Dist.), pursuant to App.R. 26(B). Price alleges that appellate

counsel was ineffective for failing to advance assignments of error related to the alleged improper admission or exclusion of evidence at trial, the trial court's failure to advise Price on the record that he had the right not to testify and supposed errors in the jury instructions. For the reasons that follow, Price has not demonstrated a genuine issue of a colorable claim of ineffectiveness of appellate counsel as it relates to the additional proposed assignments of error identified in his application. Accordingly, we deny his application.

## I.  Facts and Procedural History

{¶ 2}  Price was indicted on five counts in connection with the shooting death of his roommate, Landon Rogers:  one count of aggravated murder in violation of R.C. 2903.01(A) (Count 1), one count of murder in violation of R.C. 2903.02(A) (Count 2), one count of murder in violation of R.C. 2903.02(B) (Count 3), one count of felonious assault in violation or R.C. 2903.11(A)(1) (Count 4), and one count of felonious assault in violation of R.C. 2903.11(A)(2) (Count 5).  Each count included one- and three-year firearm specifications.  Price pled not guilty to the charges.

{¶ 3}  The case proceeded to a jury trial.  A detailed history of the case and a discussion of the underlying facts and evidence presented at trial can be found in this court's opinion in at ¶ 2-41.  A brief summary follows.

{¶ 4}  On the evening of July 26, 2022, Rogers entered Price's bedroom and a physical altercation ensued.  During the melee, Price pulled out a gun and shot Rogers multiple times.

{¶ 5} At trial, the State presented evidence to support its theory that, after Price shot Rogers five times in the bedroom, Rogers tried to get away and fell by the bedroom door. According to the State, while Rogers was on the ground, defenseless, Price shot Rogers twice more in the back. It was the State's contention that these were the shots that killed Rogers. Price admitted shooting and killing Rogers but claimed that he had acted in self-defense.

{¶ 6} Before closing arguments, the State dismissed Counts 3, 4, and 5 — the count of murder in violation of R.C. 2903.02(B) and the two felonious assault counts — leaving only Counts 1 and 2, aggravated murder in violation of R.C. 2903.01(A) and murder in violation of R.C. 2903.02(A).

{¶ 7} In addition to jury instructions on aggravated murder and murder, the trial court instructed the jury on Price's defense of self-defense and, at the request of the State, the inferior offense of voluntary manslaughter. After the instructions were given, defense counsel stated that, although Price was not objecting to the verbiage of the instructions, he was objecting to the inclusion of an instruction regarding voluntary manslaughter because Price had not requested such an instruction.

{¶ 8} The jury returned guilty verdicts for voluntary manslaughter with firearm specifications under Counts 1 and 2. After merger, Price was sentenced to a term of 13 to 18 years in prison.

{¶ 9} Price appealed his convictions, raising three assignments of error for review: (1) the trial court erred in instructing the jury on the inferior offense of

voluntary manslaughter because there was insufficient evidence of provocation or that Price was acting in a sudden fit of rage or passion, (2) Price's convictions should be overturned because the manifest weight of the evidence showed Price had acted in self-defense, and (3) the trial court abused its discretion in allowing a detective to testify regarding the trajectory of the bullets that struck the apartment's front door. *Price*, 2024-Ohio-5598, at ¶ 42-43, 48, 53 (8th Dist.). In a decision journalized on November 27, 2024, this court overruled Price's assignments of error and affirmed his convictions. *Id.* at ¶ 1, 58. Price appealed to the Ohio Supreme Court, which declined jurisdiction. *State v. Price*, 2025-Ohio-1090.

{¶ 10} On February 25, 2025, Price timely filed an application to reopen his appeal. In his application to reopen the appeal, Price asserts that he was denied the effective assistance of appellate counsel because appellate counsel failed to raise eight additional proposed assignments of error in his appeal:

> FIRST ASSIGNMENT OF ERROR: The trial court erred in denying defense's motion for a mistrial after Special Agent Daniel Boerner provided improper testimony as to the sequence of shots fired.

> SECOND ASSIGNMENT OF ERROR: Trial counsel was ineffective for failing to object to testimony provided by Curtiss Jones who did not have first-hand knowledge or understanding as to the entrance or exit of each gunshot wound.

> THIRD ASSIGNMENT OF ERROR: Trial counsel was ineffective for failing to object to the state's introduction of video footage of Kriston Price in a jail uniform, and for failure to request a limiting instruction from the court as to Price's attire.

> FOURTH ASSIGNMENT OF ERROR: Trial counsel was ineffective for failing to object to Curtiss Jones's opinion testimony as to the ethical nature of his colleagues.

FIFTH ASSIGNMENT OF ERROR:  The trial court erred in prohibiting defense counsel from introducing text messages sent by the victim to Omar Ishmael.

SIXTH ASSIGNMENT OF ERROR:  The trial court erred in failing to advise Kriston Price on the record, prior to his testimony, that he had the right not to testify.

SEVENTH ASSIGNMENT OF ERROR: Trial counsel was ineffective for failing to request a lesser-included offense instruction of reckless or negligent homicide, in light of the court's ruling as to the lesser-included instruction of voluntary manslaughter.

EIGHTH ASSIGNMENT OF ERROR:  Trial counsel was ineffective for failing to request an instruction under R.C. 2901.05(B)(2)(b) and (c), which is instructive regarding circumstances in which a person has the right to use force in a place where they have a lawful right to be.

{¶ 11} On March 10, 2025 — 103 days after the appellate decision was journalized — Price filed a motion for leave to amend his application for reopening instanter, including an amended application and seeking to assert a ninth proposed assignment of error:

NINTH ASSIGNMENT OF ERROR:  Trial counsel was ineffective for failing to object to the instruction providing for conviction for the inferior offense of voluntary manslaughter if the state failed to prove beyond a reasonable doubt the elements of murder and aggravated murder, violating Article I, Sections 10 and 16 to the Ohio Constitution, and Amendments V, VI, and XIV to the United States Constitution.

{¶ 12} Price asserted that "[f]urther research" following the filing of Price's original application had revealed an additional proposed assignment of error, that the filing of the amended application was authorized under Civ.R. 15(A), and that his amended application should be permitted beyond the 90 days for filing an original application to reopen an appeal under App.R. 26(B) because "good cause" existed for the delay due to counsel's time-sensitive filings in other cases, a retrial in

another case, and the extensive record in Price's case. The State timely opposed the application, addressing all nine proposed additional assignments of error in its memorandum of law opposing appellant's application for reopening. The State did not oppose Price's motion to amend his application to reopen the appeal.

## II. Law and Analysis

### A. Standard for Reopening Appeal Based on a Claim of Ineffective Assistance of Appellate Counsel

{¶ 13} Under App.R. 26(B), a defendant in a criminal case may apply to reopen his or her appeal of the judgment of conviction and sentence based on a claim of ineffective assistance of appellate counsel. The application must be filed within 90 days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time. App.R. 26(B)(1).

{¶ 14} Claims of ineffective assistance of appellate counsel are evaluated under the same standard applied to claims of ineffective assistance of trial counsel announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *State v. Leyh*, 2022-Ohio-292, ¶ 17. Under this standard, "an applicant must show that (1) appellate counsel's performance was objectively unreasonable, [*Strickland*] at 687, and (2) there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' [*Strickland*] at 694." *Leyh* at ¶ 18.

{¶ 15} App.R. 26(B) establishes a two-stage procedure for adjudicating claims of ineffective assistance of appellate counsel. *Id.* at ¶ 19. An applicant must

first make a threshold showing that appellate counsel was ineffective. *Id.* at ¶ 19, 35. "'A substantive review of the claim is an essential part of a timely filed App.R. 26(B) application.'" *Id.* at ¶ 21, quoting *State v. Davis*, 2008-Ohio-4608, ¶ 26. However, an applicant is "not required to conclusively establish ineffective assistance of appellate counsel just to be allowed to argue in a reopened appeal that he was deprived of the effective assistance of appellate counsel." *Leyh* at ¶ 35. An application for reopening "'shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal.'" *Id.* at ¶ 21, quoting App.R. 26(B)(5). "The burden is on the applicant to demonstrate a 'genuine issue' as to whether there is a 'colorable claim' of ineffective assistance of appellate counsel." *Leyh* at ¶ 21, citing *State v. Spivey*, 84 Ohio St.3d 24, 25 (1998).

{¶ 16} If the applicant makes the required threshold showing, demonstrating that "there is at least a genuine issue — that is, legitimate grounds — to support the claim that the applicant was deprived of the effective assistance of counsel on appeal," then the application shall be granted and the appeal reopened. *Leyh* at ¶ 25, citing App.R. 26(B)(5). The matter then

> proceeds to the second stage of the procedure, which "involves filing appellate briefs and supporting materials with the assistance of new counsel, in order to establish that prejudicial errors were made in the trial court and that ineffective assistance of appellate counsel in the prior appellate proceedings prevented these errors from being presented effectively to the court of appeals."

*Leyh* at ¶ 22, quoting 1993 Staff Notes to App.R. 26(B). If the court of appeals denies the application, it must state its reasons for the denial in its judgment entry. *Leyh* at ¶ 21, citing App.R. 26(B)(6).

{¶ 17} Thus, for Price "to justify reopening his appeal" for further briefing, he must meet "'the burden of establishing there was a "genuine issue" as to whether he has a "colorable claim" of ineffective assistance of counsel on appeal.'" *State v. Tenace*, 2006-Ohio-2987, ¶ 6, quoting *State v. Spivey*, 84 Ohio St.3d 24, 25 (1998). In considering Price's application, we are mindful that "appellate counsel need not raise every possible issue in order to render constitutionally effective assistance." *Tenace* at ¶ 7, citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983), and *State v. Sanders*, 94 Ohio St.3d 150, 151-152 (2002).

### B. First Proposed Assignment of Error: Admission of Allegedly Improper Opinion Testimony

{¶ 18} In his first proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error challenging the trial court's denial of his motion for a mistrial after the State elicited "improper opinion testimony" from witness Daniel Boerner (a special agent with the Ohio Bureau of Criminal Investigation) regarding the "sequence of shots" Price fired at the victim. During his direct examination, the State asked Boerner — who assisted in processing the scene, taking photographs, collecting and documenting physical evidence, and constructing a diagram of the scene apartment — "[W]hat sort of

evidence could you use in an entire investigation to figure out the sequence of shots . . . [i]f you know?" Boerner responded:

> So in this particular case looking at the totality of all the information that we have, the location of the victim and those types of things, you could indicate that the shooting starts in the bedroom, the victim then flees from that bedroom area, and then collapses inside the doorway.

{¶ 19} Defense counsel immediately objected to the testimony, requested that the testimony be stricken, and moved for a curative instruction and a mistrial. In a sidebar, the trial court granted the request for a curative instruction but denied the motion for a mistrial, concluding that "for the court to instruct the jury to disregard that last sentence or answer of the detective would cure the issue."

{¶ 20} The trial court then instructed the jury:

> Defense motion to strike is granted.
>
> Ladies and gentlemen, of the jury you are to disregard that last response from the witness as if you had never heard it. All right? Okay. Thank you.

{¶ 21} At the conclusion of the case, the trial court further instructed the jury:

> [E]vidence does not include any answers to questions that I have instructed you to disregard. You must not speculate as to why the court sustained an objection to any question or what the answer to such question might have been had I permitted the witness to answer the question. You must not draw any inferences or speculate on the truth of any suggestions included in a question that was not answered by the witness.
>
> . . .
>
> Evidence stricken. Statements or answers ordered stricken or to which the court sustained an objection or which you were instructed to

disregard are not evidence and must be treated as though you never heard them.

{¶ 22} A mistrial is necessary only when justice requires it and a fair trial is no longer possible. *State v. Knuff*, 2024-Ohio-902, ¶ 150; *State v. Cepec*, 2016-Ohio-8076, ¶ 89. "'The granting or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.'" *Knuff* at ¶ 150, quoting *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001).

{¶ 23} Citing *State v. Walton*, 1978 Ohio App. LEXIS 10180, *14 (8th Dist. Aug. 10, 1978), Price asserts that Boerner's testimony was "so overly prejudicial that a curative instruction was insufficient to cure the error" and "remedy the harm" caused by his testimony. *Walton* does not support reopening Price's appeal. In *Walton*, this court held that an immediate curative instruction was sufficient to "cure the error" resulting from a police officer's improper reference to a codefendant receiving probation (implying that she had been convicted of the same offense with which the defendant had been charged). *Id.* at *13-14. The court observed that although "[i]t is undoubtedly true that in some cases an inadmissible statement is of such impact that a curative instruction is ineffective and reversal is required," it could not "say that the comment complained of was so prejudicial that the immediate instruction from the judge was insufficient to cure the error." *Id.* at *14.

{¶ 24} Price has not shown a genuine issue of a colorable claim of ineffective assistance of appellate counsel related to the trial court's failure to grant a mistrial based on Boerner's testimony. Price does not explain how the stricken testimony

rendered a fair trial impossible or why the trial court's instructions were insufficient to address any alleged prejudice. The testimony was brief, and the trial court gave a curative instruction both immediately following the testimony and prior to the jury's deliberation. "If an error occurs, such as the jury hearing improper testimony, the 'jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *Cepec,* 2016-Ohio-8076, at ¶ 89, quoting *State v. Garner*, 74 Ohio St.3d 49, 59 (1995) (trial court did not abuse its discretion by failing to declare a mistrial when improper testimony was fleeting and promptly followed by a curative instruction). "A curative instruction is an appropriate remedy, rather than a mistrial, for inadvertent answers given by a witness to an otherwise innocent question." *State v. Rogers*, 2009-Ohio-5490, ¶ 52 (8th Dist.). Price has not pointed to anything in the record to suggest that the jury did not follow the trial court's instructions. Thus, this proposed assignment of error does not provide a basis for reopening Price's appeal.

### C. Second and Fourth Proposed Assignments of Error: Testimony by Curtiss Jones

{¶ 25} Price's second and fourth proposed assignments of error involve the testimony of Curtiss Jones, the supervisor of the trace evidence unit at the Cuyahoga County Medical Examiner's Office. In his second proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error challenging trial counsel's failure to object to Jones's testimony regarding Jones's "understanding" of which wounds were "entrance" and "exit" wounds. In

his fourth proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error that trial counsel was ineffective for failing to object to Jones's testimony regarding the "ethical nature" of his colleagues within the trace evidence department of the medical examiner's office.

{¶ 26} Because the decision whether to raise an objection at trial ordinarily involves trial strategy, *State v. Fields*, 2021-Ohio-1880, ¶ 20 (8th Dist.), an attorney's failure to object to error, alone, is generally insufficient to sustain a claim of ineffective assistance of counsel. *Cepec*, 2016-Ohio-8076, at ¶ 117, citing *State v. Conway*, 2006-Ohio-2815, ¶ 103. As the Ohio Supreme Court has explained:

> "[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment. . . . In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial . . . that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

*State v. Johnson*, 2006-Ohio-6404, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006).

{¶ 27} Jones was qualified without objection as an expert in the area of trace evidence examination. Among other things, Jones testified at trial regarding his examination of the clothing Rogers was wearing at the time of the shooting and whether he could identify particular "bullet holes" or "defects" as "entrance" or "exit" defects based on his examination of the size and shape of the hole and the presence or absence of gunshot residue.

{¶ 28} As to certain of the "defects" observed on Rogers's clothing, Jones testified that he was able to make a determination whether they were "entrance" or "exit" defects based on his own analysis. As to other defects, Jones explained that he was "aware of . . . what type of injury they overlay," indicating that it was his "understanding" that particular defects in the clothing overlay areas of "[e]xit injury" or "entrance injury."

{¶ 29} Price contends that trial counsel should have objected to Jones's testimony as to his "understanding" regarding whether particular clothing defects overlay "exit" or "entrance" injuries on Rogers's body on the grounds that (1) the testimony was inadmissible under Evid.R. 701 and 702 because Jones did not have "first-hand knowledge of which wounds were entrance/exit wounds" and "did not have the expertise to make such a determination" and (2) the testimony violated the prohibition against inference stacking, amounting to an improper "bolstering" of the State's evidence.

{¶ 30} Price has not shown a genuine issue of a colorable claim of ineffective assistance of appellate counsel based on trial counsel's failure to object to Jones's testimony regarding "exit" and "entrance" defects.

{¶ 31} Price does not dispute that Jones was qualified to offer opinion testimony regarding which bullet defects constituted "entrance" and "exit" defects based on his own expertise and examination of the physical evidence. Cuyahoga County Deputy Medical Examiner David Dolinak, M.D., who was qualified without objection as an expert in forensic pathology, testified before Jones, indicating which

bullet wounds were "exit" wounds and which bullet wounds were "entrance" wounds based on his examination of Rogers's injuries. At most, Jones's testimony regarding his "understanding" of the "injury overlays" was duplicative of Dolinak's testimony. Price has not identified any basis for a belief that the result of his trial could have been different had trial counsel objected to Jones's testimony on this issue.

{¶ 32} Price argues that Jones's testimony also amounted to improper inference stacking because the State "stacked the conclusions of the medical examiner onto the testing results reached by Jones to support its theory that Price shot the victim twice in the back."

{¶ 33} However, Price admitted during his cross-examination that he shot Rogers twice in the back. (Tr. 1282.) Thus, the jury would not have been required to improperly "stack inferences" based on Jones's testimony to reach the conclusion that Price shot the victim twice in the back.

{¶ 34} Price also contends that trial counsel was ineffective because he failed to object to testimony by Jones "as to the ethical nature of his colleagues" and that appellate counsel should have raised this as an error on appeal.

{¶ 35} On redirect examination, the State asked Jones to further explain the peer-review process within his department and whether anyone had ever corrected one of his reports — issues regarding which he had been previously questioned both on direct and cross-examination. Jones testified:

> Q. . . . [Y]ou said that — in your years as supervisor that none of your —
> I'll call them underlings have ever corrected your report or never told
> you you were wrong.

A. Right. I remember that question, yes.

Q. So the draft report in this case, it's not like somebody told you you were wrong; is that correct?

A. No. I think we have to think about the process. The reviewer is there to make sure that the information from the case file is represented accurately in the report. And also that they agree with the results. Like these are ethical people like if they don't agree with the results they are not going to say, he's my boss. I better go along with it. They are going to say I don't agree with this. We should have something else or look into it to see what the issue is or come to compromise on what the scientifically defensible conclusion should be. Taking stuff in and being wrong is a career killer. We're not into ruining our careers by not being accurate or scientifically defensible. That's the point to be scientifically defensible.

{¶ 36} Price contends that trial counsel should have objected to this testimony because it was speculative and amounted to the "improper bolstering of the credibility of the [S]tate's witnesses." Once again, Price has not shown a genuine issue of a colorable claim of ineffective assistance of appellate counsel related to trial counsel's failure to object to Jones's testimony.

{¶ 37} In support of his argument, Price cites *State v. Boston*, 46 Ohio St.3d 108, 129 (1989), and *State v. Cashin*, 2009-Ohio-6419 (10th Dist.). In *Boston*, the Ohio Supreme Court held that it was improper for an expert witness to testify that a child victim "had not been programmed to make accusations against her father" and had not "fantasized her abuse," i.e., "in effect, declar[ing] that [the child] was truthful in her statements." *Boston* at 128-129. Jones did not do that here.

{¶ 38} *Cashin*, is likewise distinguishable. In *Cashin*, a medical social worker testified regarding her interview of a child victim and recounted the victim's description to her of the assault, including his identification of appellant as the

perpetrator. *Id.* at ¶ 4. Appellant claimed, among other things, that his trial counsel was ineffective because he failed to object to the social worker's testimony regarding what the victim told her because the effect of the testimony was "to bolster" the victim's "credibility with the jury" — in violation of *Boston* — when the victim testified at the trial. *Id.* at ¶ 19.

{¶ 39} The Tenth District disagreed. Although the appellant claimed the entirety of the social worker's testimony had the effect of bolstering the victim's credibility "by repetition of the testimony [the victim] had already provided," the court held that "this type of indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to a victim's veracity," that "[o]nly statements directly supporting the veracity of a child witness are prohibited under *Boston*," and that any attempt to exclude the testimony on that basis would not have been successful. *Id.* at ¶ 19-20.

{¶ 40} As detailed above, Jones explained that if the department issues a report with inaccurate or unscientific conclusions, it would be "a career killer" and that he and others in his department were "not into ruining our careers by not being accurate or scientifically defensible." Jones's comments were limited to himself and his subordinates in his department, and he was the only person from his department who testified at trial. Accordingly, Jones's view that others in his department would have raised an issue if they did not agree with Jones's results or conclusions could not have "bolster[ed] the credibility" of any other of the State's witnesses, as Price claims. Further, even assuming an objection would have been sustained had trial

counsel objected to Jones's testimony regarding the "ethical nature of his colleagues," Price does not explain how he could have been prejudiced by the testimony at issue. Defense counsel thoroughly cross-examined Jones regarding the processes and procedures of his department and regarding his claim that others in his department would have spoken up if they did not agree with the results or conclusions set forth in his report. Price has not identified any basis for belief that the result of his trial could have been different had defense counsel objected to Jones's testimony on this issue. Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel based on these proposed assignments of error. Accordingly, these proposed assignments of error do not provide grounds for reopening Price's appeal.

### D. Third Proposed Assignment of Error: Introduction of Video Footage Showing Price in Jail Clothing

{¶ 41} In his third assignment of error, Price contends that trial counsel was ineffective for failing to (1) object to the State's "introduction of video footage of Kriston Price in a jail uniform" during interviews with detectives following the shooting and (2) request "a limiting instruction from the court as to Price's attire" — and that appellate counsel was ineffective for failing to raise the issue on appeal.

{¶ 42} During the testimony of Shaker Heights Detective Kurt Falke, the State introduced portions of video recordings of two police interviews with Price. In one video (State exhibit No. 613), Price is wearing an orange jumpsuit. In a second video, Price is wearing an orange jumpsuit covered by a grey blanket wrapped

around his shoulders and body for most of the interview (State exhibit No. 614). During Falke's testimony, the State also introduced several photographs of Price in which he is also wearing an orange jumpsuit (State exhibit Nos. 552-563). When asked to describe one of the photographs — State exhibit No. 552 — Falke explained the context for why Price was appearing in a jumpsuit: "So this is Mr. Price. He's in a jumpsuit that was given to him. His clothing would have been removed as evidence prior to these photos being taken."

{¶ 43} Falke further explained that the pictures were taken because "[t]ypically when there is a report of a fight or an assault we typically try to get pictures of their hands to show injuries or bruising or anything like that on their hands" and that, based on his review of the photographs, he did not see "any obvious, apparent injuries" or bruises to Price. Both the photographs and videos were admitted into evidence without objection. (Tr. 1114-1116.) In his application, Price does not challenge trial counsel's failure to object to the admission of the photographs or appellate counsel's failure to raise that issue on appeal.

{¶ 44} Citing *Estelle v. Williams*, 425 U.S. 501 (1976), and *State v. Mead*, 2021-Ohio-1107 (1st Dist.), Price asserts that "to preserve the presumption of innocence," "[t]he U.S. Supreme Court has firmly held that the state cannot compel the accused to stand trial before a jury while dressed in identifiable jail clothes," that "[a] defendant's appearance in jail clothing is a constant reminder to the jury that the defendant is in custody," which "may affect a juror's judgment," and that "the same reasoning applies to playing video interviews of the defendant while in jail-

issued clothing." Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel regarding this proposed assignment of error.

{¶ 45} In *Estelle*, the United States Supreme Court held that although "a state cannot compel an accused to stand trial before a jury while dressed in identifiable prison clothes" because of "the possible impairment of the presumption" of innocence and because "compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial" which "would be repugnant to the concept of equal justice embodied in the Fourteenth Amendment," the defendant's failure to object to being tried in such clothes was "sufficient to negate the presumption of compulsion necessary to establish a constitutional violation." *Id.* at 504, 512-513. The Court noted that there may be instances in which a defendant "prefers to stand trial before his peers in prison garments," i.e., "[t]he cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." *Id.* at 507-508.

{¶ 46} In *Mead*, the appellant argued that "the presumption of innocence was violated" when he was compelled to wear the same dress clothes provided by defense counsel throughout his four-day trial. *Id.* at ¶ 12-15. The First District rejected the argument, holding that the appellant's repeatedly worn, nondescript dress clothes were not the equivalent of identifiable jail clothes and that appellant had not established a violation of his constitutional rights. *Id.* at ¶ 15.

{¶ 47} In this case, Price was not compelled to appear before the jury in jail clothing and did not, in fact, stand trial before the jury in identifiable jail clothing. Here, the jury saw portions of videotaped interviews in which Price appeared in an orange jumpsuit. The video interviews, conducted shortly after the incident — in which Price provided a description of the incident and the events leading up to the incident — were highly probative. *See, e.g., State v. Bankston*, 2021-Ohio-4332, ¶ 36 (11th Dist.). Portions of the videos were shown during the testimony of Falke and during Price's cross-examination and comprised a small portion of the trial time. Unlike circumstances in which a defendant is compelled to wear jail clothing throughout trial, Price's appearance in jail clothing in the videos was not "a constant reminder to the jury" that Price was in custody. Thus, the concerns related to a criminal defendant's being compelled to appear at trial before a jury in prison clothing are not directly applicable here. *See State v. Clarke*, 2016-Ohio-7187, ¶ 30-32 (12th Dist.).

{¶ 48} With respect to trial counsel's failure to request a limiting instruction, the failure to seek a limiting instruction does not in and of itself indicate ineffective assistance of counsel. *See, e.g., State v. Cunningham*, 2018-Ohio-912, ¶ 26 (12th Dist.). "'[N]ot request[ing] a limiting instruction is sometimes a tactical [decision], and we do not wish to impose a duty on the trial courts to read this instruction when it is not requested.'" *State v. Bradshaw*, 2023-Ohio-1244, ¶ 38 (3d Dist.), quoting *State v. Schaim*, 65 Ohio St.3d 51, 61, fn. 9 (1992).

{¶ 49} Further, Price has not provided a basis for belief that he could have been prejudiced by defense counsel's failure to request such an instruction. The jurors saw portions of the videos after they were told that Price had been taken into police custody at the scene of the incident and after they had already seen photographs of Price in the jumpsuit, which the jurors were told were taken while Price was in police custody after his clothing had been taken as evidence. *See, e.g., Bankston* at ¶ 34-36; *State v. Cline*, 2008-Ohio-1500, ¶ 39 (11th Dist.) (playing two videos of interviews with a defendant in jail clothing was not reversible error where the jurors had been advised the defendant was in custody when he gave the interviews, noting that any error would be harmless "since the jurors were well aware of his custody status at the time of the interview"). The fact that Price gave statements to police while he was in police custody was also highlighted in defense counsel's opening statement, long before the jury saw the video: "[Price] stayed on scene, called the police and then when he was arrested he made a full statement without the benefit of counsel."

{¶ 50} Moreover, the jury's conviction of Price of voluntary manslaughter rather than the more serious charge of aggravated murder or murder tends to show that "the jury was focused on [the] evidence, not [Price's] attire" in the video when deliberating and was able to deliberate fairly and objectively. *See, e.g., State v. Letner*, 2023-Ohio-610, ¶ 19-21, 25 (8th Dist.); *State v. Hawthorne*, 2016-Ohio-203, ¶ 29-30 (8th Dist.).

**{¶ 51}** Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel regarding this proposed assignment of error. Accordingly, this proposed assignment of error does not provide a basis for reopening Price's appeal.

### E. Fifth Assignment of Error: Exclusion of Text Messages Rogers Exchanged With a Third Party

**{¶ 52}** In his fifth proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error challenging the trial court's exclusion of a text message Rogers sent to a third-party, Omar Ishamel, on the day of the incident, in which Rogers stated that "there's some shit about to be going down in Shaker."[1] Defense counsel sought to introduce the text message during the cross-examination of Detective Falke. The State objected to the evidence on the ground that it was inadmissible hearsay and involved "messages that the victim, the deceased had with completely other people" and "we have no knowledge that the defendant himself ever even knew about it." The trial court sustained the objection.

**{¶ 53}** Price contends that the trial court erred in excluding this evidence because "these statements were not introduced for their truth" — i.e., "that

---

[1] Although Price indicates, in his application, that defense counsel sought to introduce "text messages" between Rogers and Ishamel, referencing pages 1075, 1077, and 1080-1085 of the trial transcript, Price's proffer included only a single text message between Rogers and Ishmael. His proffer below also included a text message Rogers sent to Nardia McCord (Ishamel's mother), a text message Rogers sent to his half-sister, and a text message from Rogers to Joshua Price (Price's brother). Because Price does not specifically address those other text messages in his application, we do not address them here.

something was actually going to 'go down' in Shaker" — but to show Rogers's "current plan/intent to take action against Price," falling "squarely within" the hearsay exception under Evid.R. 803(3). Under Evid.R. 803(3), "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will" is "not excluded by the hearsay rule."

{¶ 54} Even assuming the text message was admissible under Evid.R. 803(3) (and otherwise relevant and admissible), Price does not explain how he was prejudiced by the trial court's exclusion of Rogers's text message to Ishamel. The text message was incredibly vague. It makes no mention of Price or any intent to take action against Price. It contains no description of what was going to "go down" or when it was going to "go down." Further, at issue in this case was what Price knew, believed, and intended with respect to Rogers — not Rogers's subjective intent. No evidence was presented or proffered that Price was aware of the text message exchanged between Rogers and Ishamel.

{¶ 55} Further, evidence of the text message was cumulative of other evidence presented at trial regarding the parties' dispute and Rogers's intent to fight Price, including evidence of text messages Rogers and Price exchanged prior to the incident, testimony by Nolan Coats (a friend of Price and Rogers), and Price's own testimony. Price has not identified any basis for belief that the result of his trial

could have been different had the trial court admitted evidence of the text message between Rogers and Ishamel. Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel with respect to this proposed assignment of error. Accordingly, this proposed assignment of error does not provide grounds for reopening Price's appeal.

### F. Sixth Proposed Assignment of Error – Failure to Advise of Right Not to Testify

{¶ 56} In his sixth proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error challenging the trial court's failure to advise Price, on the record, "immediately prior to taking the stand at trial," of his Fifth Amendment right not to testify. Price has pointed to no legal authority imposing such a requirement on the trial court.

{¶ 57} As this court has previously stated:

As to the responsibility of the judge to ensure that a defendant has waived his right to testify, the law is clear.

The court has no obligation to inquire into whether the defendant knowingly and intelligently waived the right not to testify inherent in the privilege against compelled self-incrimination. It is primarily the responsibility of counsel, not the judge, to advise a defendant on whether or not testify, and the tactical advantages and disadvantages of each choice. For the court to discuss the choice with defendant would intrude into the client-counsel relationship . . . .

*United States v. Martinez*, 883 F.2d 750, 757 (9th Cir.1989) and *United States v. Goodwin*, 770 F.2d 631 (7th Cir.1985). The courts of Ohio have affirmed this principle. "[T]he court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred." *State v. Bey*, 6th Dist. Lucas No. L-94-003, 1997 Ohio App. LEXIS 4182 (Sept. 19, 1997) and *State*

*v. Morrison*, 10th Dist. Franklin No. 91AP-1326, 1993 Ohio App. LEXIS 4870 (Oct. 7, 1993).

*State v. Harris*, 2020-Ohio-5425, ¶ 15 (8th Dist.).  Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel regarding this proposed assignment of error.  Accordingly, this proposed assignment of error does not provide grounds for reopening Price's appeal.

### G. Seventh Proposed Assignment of Error – Failure to Request Lesser-Included Offense Instructions for Reckless or Negligent Homicide

{¶ 58} In his seventh proposed assignment of error, Price argues that appellate counsel was ineffective for not assigning as error trial counsel's failure to request lesser-included offense instructions for reckless and negligent homicide. Price cites no legal authority in support of his proposed assignment of error but simply asserts that because "the reasonableness or unreasonableness" of his actions was "available as a basis for a verdict," trial counsel should have requested lesser-included offense instructions for reckless and negligent homicide.

{¶ 59} Even assuming a lesser-included offense instruction could have been warranted based on the evidence presented, appellate courts, as stated above, are not permitted to second-guess the strategic decisions of trial counsel.[2]  *State v. Carter*, 72 Ohio St.3d 545, 558 (1995).  Debatable strategic and tactical decisions generally may not form the basis of a claim for ineffective assistance of counsel, even

---

[2] The Ohio Supreme Court has held that "[n]egligent homicide is not a lesser included offense of murder."  *State v. Koss*, 49 Ohio St.3d 213 (1990), paragraph four of the syllabus; *see also State v. Thorpe*, 2021-Ohio-1295, ¶ 26 (8th Dist.); *State v. Brown*, 2021-Ohio-2540, ¶ 55 (9th Dist.); *State v. Kennedy*, 2018-Ohio-4172, ¶ 51 (3d Dist.).

if, in hindsight, it looks as if a better strategy had been available. *See, e.g., State v. Debose,* 2022-Ohio-837, ¶ 23 (8th Dist.). Courts have held that "'[i]t is a reasonable trial strategy to argue self-defense and not request an instruction on an inferior degree offense or lesser included offense.'" *State v. Baker*, 111 Ohio App.3d 313, 324 (10th Dist. 1996); quoting *State v. McCullough*, 1995 Ohio App. LEXIS 3377, *5 (8th Dist. Aug. 17, 1995); *see also State v. Bouie*, 2019-Ohio-4579, ¶ 58 (8th Dist.).

{¶ 60} Thus, to establish ineffective assistance of trial counsel based on a failure to request an instruction on a lesser-included offense, an "[a]ppellant must [generally] demonstrate that the failure to make the request resulted from a reason other than reasonable trial strategy." *State v. Hubbard*, 2014-Ohio-122, ¶ 14 (10th Dist.). Even if the evidence could have supported an instruction on a lesser-included offense, trial counsel could have reasonably concluded that, rather than presenting the jury with conflicting theories of the case (which may have been counterproductive and even detrimental to the defense of self-defense), the best strategy was to proceed on only a self-defense theory. Counsel may have believed this was the stronger argument and/or the position most consistent with the statements Price made to the police and the 911 operator, including Price's statement to the 911 operator immediately following the shooting that "I just had to kill my roommate."

{¶ 61} Here, Price has pointed to nothing to explain why trial counsel failed to request a lesser-included offense instruction. "The record may reveal that trial counsel did not request a certain jury instruction, but, without more, the court of

appeals would have to guess as to why trial counsel did not make the request." *State v. Griffie,* 74 Ohio St.3d 332, 333 (1996) (where appellant "offered no proof of appellate counsel's ineffective assistance besides the record," "no genuine issue was raised" that appellate counsel was ineffective for not arguing that trial counsel was ineffective for not requesting an instruction on lesser-included offense). The record here shows that the primary defense strategy throughout the trial, from the opening statement to closing argument, was to argue that Price acted in self-defense.

{¶ 62} Without any evidence suggesting trial counsel's reason for not seeking instructions on a lesser-included offense and given the evidence presented at trial, Price has not established a genuine issue of a colorable claim of ineffective assistance of appellate counsel regarding this proposed assignment of error. Accordingly, this proposed assignment of error does not provide grounds for reopening Price's appeal.

## H. Eighth Proposed Assignment of Error: Failure to Request Instruction Regarding Presumption of Self-Defense

{¶ 63} In his eighth proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error challenging trial counsel's failure to request additional instructions, under R.C. 2901.05(B), as part of the trial court's self-defense jury instructions, regarding the presumption of self-defense and the "circumstances in which a person has the right to use force in a place where they have a lawful right to be." Specifically, Price contends that trial counsel should have requested a jury instruction "clearly

informing" the jury that the presumption of self-defense "does not apply if 'the person against whom the defensive force is used has a right to be in, or is a lawful resident of, the residence,'" citing R.C. 2901.05(B)(2) and 2901.05(B)(3)(a), and that appellate counsel should have challenged this failure on appeal.

{¶ 64} A review of the trial transcript shows that the trial court specifically instructed the jury, as part of its self-defense jury instructions, regarding the presumption of self-defense and the circumstances in which it applied. (Tr. 1396-1397.)

{¶ 65} Given that the trial court, in fact, gave the jury specific instructions explaining the presumption of self-defense (which Price now contends the jury should have been given), and given that he does not identify any other specific, additional or different self-defense instructions he contends should have been given, the proposed assignment of error does not present a genuine issue of a colorable claim of ineffective assistance of appellate counsel. Accordingly, this proposed assignment of error does not present grounds for reopening Price's appeal.

### I. Ninth Proposed Assignment of Error and Motion for Leave to Amend

{¶ 66} As stated above, on March 10, 2025, Price filed an unopposed motion for leave to amend his application to reopen his appeal in order to assert a ninth proposed assignment of error. App.R. 26(B) does not expressly provide for amendment of applications to reopen; it is silent on the issue. Acknowledging this fact, Price contends that his amended filing is authorized under Civ.R. 15(A), which

permits the filing of amended "pleadings" within 28 days of filing as a matter of right. However, "pleadings" under the Ohio Civil Rules are limited to a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, a third-party answer, and a reply to an answer or a third-party answer. Civ.R. 7(A). They do not include an application for reopening pursuant to App.R. 26(B).

{¶ 67} In support of his request to amend his application, Price cites *State v. Rosemond*, 2021-Ohio-768, ¶ 3-4, 19, 26 (1st Dist.), and *State v. Wachee*, 2021-Ohio-4427, ¶ 11 (8th Dist.). These cases are not directly on point. In *Rosemond*, the First District granted the appellant's pro se application to reopen his appeal, finding that it demonstrated a genuine issue of a colorable claim of ineffective assistance of appellate counsel in failing to assign as error trial counsel's ineffectiveness concerning the imposition of an unauthorized five-year period of postrelease control. *Id.* at ¶ 1, 9, 26. In granting appellant's application to reopen, the court also granted the appellant leave to amend his application to include a signed and sworn affidavit that was not included in his original, unsigned application. *Id.* at ¶ 3-4. The court rejected the State's argument that the application should be denied because it did not comply with Civ.R. 11's requirement that appellant "sign the . . . document" and did not include the "sworn statement" required by App.R. 26(B)(2)(d), reasoning that appellant satisfied the Civ.R. 11 signature requirement by amending his application with his signed and sworn affidavit and that even if the affidavit did not comply with App.R. 26(B)(2)(d), it was not "necessary" to the court's

determination under App.R. 26(B)(5) that there was a genuine issue as to appellate counsel's ineffectiveness. *Id.* at ¶ 26.

{¶ 68} In *Wachee*, this court cited *Rosemond* for the proposition that "some courts have held that an application with demonstrable merit should not be denied solely due to the failure to include an affidavit," then distinguished the appellant's application because it "lack[ed] any form of argument and, thus, demonstrable merit." *Id.* at ¶ 11.

{¶ 69} With respect to the timeliness of his amended application, Price contends that his amended application should be permitted, notwithstanding that it was filed beyond the 90-day deadline for filing an application to reopen an appeal, because his original application was timely and "good cause" exists for the delay in filing an amended application based on counsel's time-sensitive filings in other cases, a retrial in another case, and the extensive record in Price's case.

{¶ 70} Price does not cite any legal authority in support of his claim that such circumstances constitute "good cause" for a delayed filing under App.R. 26(B)(2)(b). Courts have rejected similar claims, holding that the fact that counsel was "busy" with other cases does not constitute good cause for a delayed filing under App.R.26(B)(2)(b). *See, e.g., State v. Wilson*, 80 Ohio St.3d 132, 134 (1997), citing *State v. Williams*, 74 Ohio St.3d 454, 455 (1996) (good cause is not shown when delay in filing application to reopen is due to the busy schedule of the public defender and the need to do new research); *see also State v. LaMar*, 2004-Ohio-3976, ¶ 8 ("excuse" that defendant and his attorneys were "occupied with other

appeals" is not "good cause"). Courts have also rejected assertions of "good cause" based on claims that "the trial was complex." *See, e.g., State v. McGee*, 2013-Ohio-1853, ¶ 10, citing *State v. Witlicki*, 74 Ohio St.3d 237, 238 (1996).

{¶ 71} This court has previously denied a motion to amend an application for reopening, observing that "[t]here exists no provision for amending an original application for reopening" and that "amendment of an application for reopening may be considered a successive application for reopening and there exists no right to file successive applications for reopening." *See, e.g., State v. Burks*, 2022-Ohio-4397, ¶ 4-5 (even considering the arguments raised in support of good cause, through the motion to amend, court concluded that appellant did not establish a valid basis for the untimely filing of his App.R. 26(B) application); *compare State v. Morton*, 2021-Ohio-3468, ¶ 11-12 (8th Dist.) (although noting that the court was permitted to "summarily reject" second proposed assignment of error raised through an untimely "supplement" to original App.R. 26(B) application for reopening for which "good cause" had not been established, it nevertheless addressed second proposed assignment of error, concluding defendant failed to establish prejudice); *State v. Durham*, 2012-Ohio-2053, ¶ 19 (8th Dist.) (although noting that "App.R. 26(B) does not authorize the filing of a supplemental brief and affidavit," court reviewed the arguments raised in the supplemental brief and found them to be without merit).

{¶ 72} We need not resolve the issue here because even if we were to consider Price's arguments with regard to his proposed ninth assignment of error, we would not find grounds to reopen his appeal.

{¶ 73} In his ninth proposed assignment of error, Price argues that appellate counsel was ineffective for not advancing an assignment of error based on trial counsel's failure to object to the trial court's instructions that if the jury found Price not guilty of (or was unable to reach a unanimous verdict on) the aggravated murder or murder counts, it should "proceed to deliberate on the inferior offense of voluntary manslaughter." Price contends that "[t]he jury verdict of not guilty on the aggravated murder count, and hung jury on the murder count, precluded a guilty verdict on the voluntary manslaughter counts" and that the trial court's instruction that the jury should "proceed to deliberate" on the voluntary manslaughter charge "was infected with error," "impacted Appellant Price's substantial rights, affected the outcome of the trial proceeding, and established a miscarriage of justice which requires correction." (Emphasis deleted.) Over defense counsel's objection, the State requested a voluntary manslaughter jury instruction, as an inferior offense of aggravated murder and murder, to support an alternative theory of the case, based on the evidence that had been presented at trial.

{¶ 74} Jury instructions are generally viewed in their entirety to determine if they contain prejudicial error. *See, e.g., State v. Guffie*, 2024-Ohio-2163, ¶ 149 (8th Dist.); *Haddad v. Maalouf-Masek*, 2022-Ohio-4085, ¶ 33 (8th Dist.) ("A single

jury instruction may not be judged in artificial isolation but must be viewed in the context of the overall charge.").

{¶ 75} Price indicates that his proposed ninth assignment of error relates to the trial court's instructions at pages 1408 and 1411 of the trial transcript, where the trial court read and explained the verdict forms to the jury. After the jury began deliberating, the trial court realized that it had omitted a portion of the jury instruction related to voluntary manslaughter, specifically, the definition of knowingly. Accordingly, the trial court reinstructed the jury on voluntary manslaughter (including its relationship to the aggravated murder and murder charges). As it relates to the issue raised here, the trial court reinstructed the jury, in relevant part, as follows:

> Before you can find the defendant guilty of voluntary manslaughter you must find beyond a reasonable doubt that on or about the 26th day of July in 2022 and in Cuyahoga County, Ohio the defendant while under the influence of sudden passion or in a sudden fit of rage either of which was brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force shall knowingly cause the death of Landon Joseph Rogers.
>
> . . .
>
> If you find that the state failed to prove beyond a reasonable doubt that the defendant caused the death of Landon Joseph Rogers in accordance with the law as provided in counts 1 and/or 2 then you must find the defendant not guilty of aggravated murder in count 1 and/or murder in count 2.
>
> If you find that the state proved beyond a reasonable doubt that the defendant caused the death of Landon Joseph Rogers in accordance with the law as provided in counts 1 and/or 2 and you find beyond a reasonable doubt that he knowingly acted while under influence of sudden passion or in a sudden fit of rage either of which was brought

on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force then you must find the defendant guilty of the inferior offense of voluntary manslaughter.

The inferior offense of aggravated murder and/or murder is stated in counts 1 and/or 2.

If you find that the state proved beyond a reasonable doubt that the defendant caused the death of Landon Joseph Rogers in accordance with the law as provided in counts 1 and/or 2 but you do not find beyond a reasonable doubt that he knowingly acted while under the influence of sudden passion or in a sudden fit of rage either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite the defendant into using deadly force then you must find the defendant not guilty of the inferior offense of voluntary manslaughter.

The inferior offense of aggravated murder and/or murder is stated in counts 1 and/or 2.

(Tr. 1440-1444.)

{¶ 76} After giving these instructions, the trial court further instructed the jury that it should "give no effect to the prior instruction given to you" and "to disregard your prior deliberations and start again as to the information and the definition that the court has provided to you on this instruction of voluntary manslaughter." (Tr. 1440-1445.) In his proposed amended application, Price has not challenged these corrected instructions.

{¶ 77} In support of his argument that the jury verdict of not guilty on the aggravated murder count and the inability to reach a verdict on the murder count precluded a guilty verdict as to voluntary manslaughter, Price cites four cases — *State v. Ruppart*, 2010-Ohio-1574 (8th Dist.); *State v. James*, 2022-Ohio-2040 (8th Dist.); *State v. Roberts*, 109 Ohio App.3d 634 (6th Dist. 1996); and *State v. Nichols*,

2007-Ohio-5219 (11th Dist.). Each of those cases involved aggravated assault as an inferior offense of felonious assault. This case is distinguishable.

{¶ 78} "[A]n offense is an 'inferior degree' of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *State v. Deem*, 40 Ohio St.3d 205 (1988), paragraph two of the syllabus; *State v. Blalock*, 2022-Ohio-2042, ¶ 9 (8th Dist.). In the cases cited by Price, involving aggravated assault as an inferior offense of felonious assault, the offenses had identical elements except that aggravated assault had an additional mitigating element. As such, a finding that all of the elements of felonious assault had not been proven would necessarily preclude a finding that all of the elements of aggravated assault had been proven. *See, e.g., James* at ¶ 17-21. That is not the situation here.

{¶ 79} Voluntary manslaughter is considered an inferior offense of murder and aggravated murder because the elements of voluntary manslaughter are "contained within" the offense of murder, except for additional mitigating elements – not because the elements of the offenses are "identical," except for additional mitigating elements. *State v. Shane*, 63 Ohio St.3d 630, 632 (1992); *State v. Tyler*, 50 Ohio St.3d 24, 36-37 (1990); *Blalock* at ¶ 10 (8th Dist.); *State v. Phillips*, 2020-Ohio-4748, ¶ 9 (8th Dist.).

{¶ 80} To find Price guilty of aggravated murder in violation of R.C. 2903.01(A), the jury needed to find beyond a reasonable doubt that Price "*purposely, and with prior calculation and design*, cause[d] the death" of

Rogers. (Emphasis added.) To find Price guilty of murder in violation of R.C. 2903.02(A), the jury needed to find beyond a reasonable doubt that Price "*purposely* cause[d] the death" of Rogers. Ohio's voluntary manslaughter statute, R.C. 2903.03(A), provides, in relevant part: "No person, *while under the influence of sudden passion or in a sudden fit of rage*, either of which is *brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force*, shall *knowingly* cause the death of another." (Emphasis added.) "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶ 81} Thus, a finding by the jury that the State had failed to prove all of the elements of murder or aggravated murder beyond a reasonable doubt would not necessarily preclude the jury from finding that all the elements of voluntary manslaughter had been proven. *See, e.g., State v. Code*, 1999 Ohio App. LEXIS 3592, *19-22 (8th Dist. Aug. 5, 1999) (rejecting the defendant's argument that he could not be found guilty of the inferior offense of voluntary manslaughter because the jury found him not guilty of murder). As detailed above, as part of its voluntary manslaughter instruction, the trial court specifically explained what findings (or

combination of findings) would support guilty or not guilty verdicts as to each of the offenses.

{¶ 82} Accordingly, this proposed assignment of error would not present a genuine issue of a colorable claim of ineffective assistance of appellate counsel.

{¶ 83} For all these reasons, Price's application for reopening is denied.

_____
EMANUELLA D. GROVES, JUDGE

MICHELLE J. SHEEHAN, P.J., and
DEENA R. CALABRESE, J., CONCUR